IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENT STUBBS,
M51378

      Plaintiff,

  vs.                                            Case No. 17-cv-838-SMY

NICHOLAS LAMB,
MR. DENSMORE,
MR. KONE,
CHRISTOPHER WALTZ,
BROOK ARMSTRONG,
LISA KITTLE,
SHERRI NEWNELL, and
MRS. MCVEE,

      Defendants.

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kent Stubbs, an inmate at Lawrence Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff's claims involve alleged health and safety violations based on how food is prepared and served at Lawrence. In connection with these claims, Plaintiff has sued Nicholas Lamb (Warden) and seven food service/dietary supervisors, including Mr. Densmore (Food Service Manager), Mr. Kone (Food Service Manager), Christopher Waltz (Dietary Supervisor), Brook Armstrong (Dietary Supervisor), Lisa Kittle (Dietary Supervisor), Sherri Newnell (Dietary Supervisor) and Mrs. McVee (Dietary Supervisor). Plaintiff seeks monetary damages and injunctive relief. (Doc. 1, p. 14).

This case is now before the Court for a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

While incarcerated at Lawrence, Plaintiff has become sick on several occasions after eating in the chow hall. (Doc. 1, p. 9). Plaintiff's symptoms have included nausea, severe diarrhea and vomiting. *Id.* Plaintiff believes his bouts of illness are caused by food contamination and unsanitary conditions in the chow hall and kitchen at Lawrence. *Id.* The following are Plaintiff's specific allegations pertaining to health and safety issues in the kitchen and chow hall at Lawrence.

*Persistent Rodent Infestation*

The chow hall floor is often covered with trash and food. Plaintiff has observed mice running in and out of large holes in the chow hall walls to retrieve food and trash from the floor. (Doc. 1, p. 10). *Id.* On one occasion, Plaintiff saw several mice retrieving food from the chow hall floor. *Id.*

Inmates working in the kitchen have reported that there is a "serious" rodent infestation in the kitchen where food is being prepared. (Doc. 1, p. 11). Mice have been observed "running around" the kitchen area, beneath the stoves/hot boxes and inside the coolers. *Id.* Inmates have observed mouse droppings in food/drink crates and in food preparation materials. *Id.* Plaintiff has also seen signs of rodent nesting beneath the steamers on the food service line. (Doc. 1, p. 13).

On December 13, 2016, Plaintiff found a mouse dropping stuck to the bread roll on his lunch tray. (Doc. 1, p. 9). He showed the mouse dropping to another inmate and he agreed it was indeed a mouse dropping. *Id.* On the same day, another inmate reported finding a mouse dropping on his milk carton. *Id.*

*Other Unsanitary Conditions*

Plaintiff has been served food on dirty trays with black buildup and leftover food residue. (Doc. 1, p. 10). Food trays are prepared in advance and left sitting out well before inmates arrive to eat. (Doc. 1, p. 10). During the summer months, Plaintiff has observed flies swarming around the prepared food. *Id.* The chow hall has been shut down "a few times" because maggots were found on the serving line. *Id.* Plaintiff also claims that food is not maintained at a safe serving temperature. (Doc. 1, p. 10). This is because the food steamers are not used properly and/or are broken. (Doc. 1, pp. 10, 13).

Water is often served in cups that are filthy and the water itself is discolored and appears to contain contaminants. (Doc. 1, p. 10, 13). Inmates working in the kitchen have warned Plaintiff not to drink out of the cups because they are dirty. (Doc. 1, p. 10). The kitchen supervisor knows the cups are dirty but has instructed inmates working in the kitchen to use the cups anyway. (Doc. 1, p. 10).

*Kitchen Supervisors*

According to the Complaint, "kitchen supervisors are aware of [the above] conditions and either turn a blind eye to the conditions or are willing to do very little to address the problems." (Doc. 1, p. 11).

*Nicholas Lamb*

On December 18, 2016, Plaintiff submitted an emergency grievance to Lamb, the warden, complaining about the rodent infestation and other unsanitary conditions in the kitchen and chow hall. (Doc. 1, pp. 9, 11). On December 27, 2016, Plaintiff's emergency grievance was deemed a non-emergency and Plaintiff was told to submit a non-emergency grievance. (Doc. 1, p. 11). Plaintiff submitted a non-emergency grievance and after several months, that grievance was denied. (Doc. 1, pp. 10-12). The grievance denial was signed by Lamb. (Doc. 1, p. 12). Plaintiff also sent several request slips regarding his concerns to Lamb. (Doc. 1, pp. 11-12). All of Plaintiff's request slips were ignored. (Doc. 1, p. 12).

Plaintiff filed a second emergency grievance with Lamb regarding his counselor, Mr. Kittle's inadequate response to Plaintiff's complaints/grievances about unsanitary conditions. (Doc. 1, p. 12). Plaintiff had submitted a non-emergency grievance to Kittle in January 2017. Thereafter, Kittle refused to answer Plaintiff's questions about the grievance, refused to speak with Plaintiff and/or delayed handling the grievance. *Id.* Plaintiff subsequently learned that Kittle

is married to Lisa Kittle, one of the dietary supervisors Plaintiff complained about in his grievance (and a defendant in this action). *Id.* Plaintiff complained that this was a conflict of interest. *Id.* Lamb denied the grievance as a non-emergency. *Id.*

**Grievances Directed to Non-Defendants**

Plaintiff also wrote several request slips and/or grievances to a number of individuals who are not defendants in this action, including two assistant wardens and the head food services manager. (Doc. 1, pp. 11-12). Plaintiff's letters and/or grievances were ignored and/or denied for various reasons. *Id.*

**Status of Kitchen and Chow Hall at the time of Filing**

Despite the numerous complaints and grievances Plaintiff has filed, he has not seen any attempts to correct the health and safety issues he has observed in the kitchen and chow hall. (Doc. 1, p. 13). Plaintiff claims that he continues to observe signs of a persistent rodent infestation and other unsanitary conditions continue. *Id*.

## Discussion

Based on the allegations of the Second Amended Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into a single count. Any other claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

> **Count 1 –** Eighth Amendment claim against Lamb, Densmore, Kone, Waltz, Armstrong, Kittle, Newnell, and McVee for failing to address the unsanitary and hazardous conditions in the areas where food is prepared and served at Lawrence, with deliberate indifference to the serious risks to Plaintiff's health and safety .

Although the Constitution "does not mandate that prisons be comfortable," T*homas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997), incarcerated persons are entitled to confinement under

humane conditions that satisfy "basic human needs," *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Plaintiff is a convicted prisoner, so the source of this right is the Eighth Amendment's proscription against cruel and unusual punishment. *See id.*

A claim of constitutionally inadequate prison conditions requires a two-step analysis. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). The Court first examines whether the conditions at issue were "sufficiently serious" that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *See id.* (internal quotation marks and citations omitted). If the inmate demonstrates sufficiently serious conditions, the Court then considers whether prison officials acted with deliberate indifference to those conditions. *See id.*

The conditions described in the Complaint, including a persistent rodent infestation, problems with flies and maggots around the food and in the food service area, serving food at unsafe temperatures, using dirty containers/trays to serve food and water and otherwise unsanitary food preparation and service areas satisfies the objective component – at least at this stage of the litigation. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("prolonged pest infestation, specifically a significant infestation of cockroaches and mice," may be considered a deprivation sufficient to constitute a constitutional violation); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (lack of sanitation can violate the Eighth Amendment); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (state must provide inmates with a "healthy, habitable environment," including "food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.") (internal quotation marks and citation omitted); *Drake v. Velasco*, 207 F.Supp.2d 809, 812 (N.D. Ill. 2002) (food prepared in a manner that "does not meet the minimal standards of safety," or is

"routinely unsanitary" so as to present an immediate threat to inmates' health, can rise to the level of a constitutional violation); *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) (unsanitary kitchen, including kitchen equipment in a state of disrepair, supported the district court's finding of an Eighth Amendment violation).

Reading the Complaint liberally and giving Plaintiff the benefit of the doubt he is entitled to at this juncture, the Complaint also suggests that Defendants responded with deliberate indifference to these conditions. Plaintiff alleges that he submitted multiple grievances and letters to Lamb, which were ignored or denied. Despite these complaints, the complained of conditions have not been addressed. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")).

As to the remaining defendants, Plaintiff alleges that "kitchen supervisors" were well aware of the complained of conditions but turned a blind eye. Once again, reading the Complaint liberally, it appears that "kitchen supervisors" is meant to include the two food service managers (Densmore and Kone) and the five dietary supervisors (Waltz, Armstrong, Kittle, Newnell, and McVee). Therefore, the Court will also allow the claim to proceed as to these defendants.

A more fully developed record will shed light on whether Lamb and the dietary/food service defendants were personally involved in the alleged constitutional violation and acted with the requisite culpable state of mind, deliberate indifference.

## Pending Motions

**1. Motion for Leave to Proceed *in forma pauperis* (Doc. 2)**

Plaintiff's IFP motion shall be addressed in a separate Order of this Court.

**2. Motion for Recruitment of Counsel (Doc. 3)**

Plaintiff's motion for recruitment of counsel shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

**3. Motion for Service of Process at Government Expense (Doc. 4)**

Plaintiff's motion for service of process at government expense is **GRANTED**. Service shall be ordered below on those defendants who remain in this action pursuant to this screening order.

**4. Motion for Status (Doc. 7)**

In light of the issuance of this Order, Plaintiff's Motion for Status is **DENIED** as **MOOT**.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint shall receive further review as to **LAMB, DENSMORE, KONE, WALTZ, ARMSTRONG, KITTLE, NEWNELL,** and **MCVEE.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **LAMB, DENSMORE, KONE, WALTZ, ARMSTRONG, KITTLE, NEWNELL,** and **MCVEE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including Plaintiff's Motion for Recruitment of Counsel. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 6, 2017**

s/ STACI M. YANDLE  
**Staci M. Yandle**  
**United States District Judge**